## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
## WESTERN DIVISION

| | |
|---|---|
| STONE BANK, )<br>)<br>    Plaintiff, )<br>)<br>v. )<br>)<br>CAH ACQUISITION COMPANY 11, LLC, )<br>)<br>    Defendant. ) | Case No. 2:19-cv-02040-SHL-dkv |

## ORDER APPOINTING SPECIAL MASTER, GRANTING PRELIMINARY INJUNCTION, GRANTING LEAVE TO AMEND COMPLAINT AND DENYING MOTION FOR EXTENSION OF TIME AS MOOT

This matter is before the Court upon the Verified Complaint for the Appointment of Receiver, Temporary Restraining Order, and Temporary and Permanent Injunction by Stone Bank and upon the Emergency Motion for Appointment of Receiver and Related Injunctive Relief both originally filed in the Chancery Court for Lauderdale County, Tennessee, removed to this Court on Defendant's Notice of Removal, filed January 14, 2019. (ECF No. 1.) At the time of removal, Plaintiff had pending requests in state court for the appointment of a receiver and other injunctive relief. (Id. at 13.) Plaintiff had been, at the time of removal, granted a Temporary Restraining Order ("TRO") by the Chancery Court. This Court extended the TRO until the entry of this Order. (ECF No. 21 and the Court's oral ruling on January 29, 2019 at approximately 5:45 p.m.)

The Court held a hearing on Plaintiff's Emergency Motion for Appointment of Receiver and Related Injunctive Relief on January 29, 2019. Both Plaintiff (hereinafter "Stone Bank") and

Defendant (hereinafter "CAH 11") were represented by counsel at the hearing and had an opportunity to present their arguments to the Court. The parties also submitted memorandums of law regarding the emergency motion. (See ECF No. 1 at 13, Plaintiff's Emergency Motion for Appointment of Receiver and Related Injunctive Relief; ECF No. 15, Defendant's Response to Plaintiff's Emergency Motion for Appointment of Receiver and Related Injunctive Relief;  and ECF No. 18, Defendant's Supplemental Response to Plaintiff's Emergency Motion for Appointment of Receiver and Related Injunctive Relief.)

As a threshold matter, the Court finds that while Plaintiff's Complaint alleges facts that show a breach of contract upon which equitable relief may be granted, the Complaint does not contain a specific count alleging breach of contract. A party may amend its pleading once as a matter of course within 21 days after serving it. Fed. R. Civ. P. 15(a)(1)(A). Additionally, the Court should freely give leave for a party to amend its pleading when justice so requires. Fed. R. Civ P. 15(a)(2). At the hearing of this matter, Plaintiff made an oral motion for leave to amend its complaint. The Court finds that the motion was made within 21 days after serving the complaint and further finds that leave to amend should be freely given. Plaintiff's motion to amend its complaint is therefore **GRANTED**.

In a related motion, Defendant has filed a Motion for Extension of Time to File Answer. (ECF No. 19.) In light of the Court granting leave for Plaintiff to file an amended complaint, Defendant's Motion for Extension of Time to File an Answer is **DENIED** as moot.

Stone Bank is the owner and holder in due course of a loan made to CAH 11. CAH 11 owns and operates the Lauderdale Community Hospital, located at 326 Asbury Avenue in Ripley, Tennessee. Stone Bank's loan is secured by a deed of trust and an assignment of rents and leases,

referred to herein collectively with the note and Loan Agreement evidencing the loan as the "Loan Documents." The Loan Documents describe in detail the duties and obligations of CAH 11, as borrower and the real and personal property of the Lauderdale Community Hospital serving as collateral for the loan. CAH 11 acknowledges that it is in default on Stone Bank's loan.

Stone Bank has presented evidence that the condition of the Collateral as a functioning hospital is at substantial risk, including delays in payroll, employee layoffs, employee resignations, insufficient supplies to function properly, taking employee payroll deductions without providing related benefits, and nonpayment of physicians for services provided to the Lauderdale Community Hospital. CAH 11 acknowledged its significant financial distress, and presented evidence that even if the Lauderdale Community Hospital closed down and ceased operation, the real estate owned by CAH 11 was adequate collateral to secure Stone Bank's loan. The Parties do not dispute that Stone Bank has been asking CAH 11 for financial information that it is entitled to receive under the Loan Documents since before September 2018, and that CAH 11 has not provided Stone Bank any financial information requested. The Parties also agree that they anticipate a large payment from CMS to CAH 11 in the near future.

The factors considered in determining whether to issue a preliminary injunction include: "(1) the movant's likelihood of success on the merits; (2) whether the movant will suffer irreparable injury without a preliminary injunction; (3) whether issuance of a preliminary injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuance of a preliminary injunction." McNeilly v. Land, 684 F.3d 611, 615 (6th Cir. 2012) (citing American Imaging Services, Inc. v. Eagle– Picher Indus., Inc. (In re Eagle–Picher

Indus., Inc.), 963 F.2d 855, 858 (6th Cir.1992)). Plaintiffs have met their initial burden to justify a temporary restraining order.

First, Stone Bank has demonstrated a likelihood of success on the merits of a breach of contract claim. CAH 11 admits it is in default on Stone Bank's loan. While the parties disagree on whether the appointment of a receiver is the appropriate equitable remedy for the default, there is no dispute that the loan is in default.

The other preliminary injunction factors also favor Stone Bank. First, Stone Bank is likely to suffer irreparable harm without a preliminary injunction because of the potential closing of Lauderdale Community Hospital and resulting loss of its valuable status as a critical access hospital. Stone Bank offered evidence that the loan at issue was based, at least in part, on the collateral continuing to operate as a critical access hospital.  Furthermore, if the Lauderdale Community Hospital closes, the real estate assets of CAH 11 that would remain present a substantial risk to Stone Bank that such remaining collateral would be insufficient collateral for the loan. Stone Bank is seeking to maintain the ongoing operations of the Lauderdale Community Hospital and there is no evidence of substantial harm to others that will occur if an injunction is granted. Finally, the public interest is served by preserving the Lauderdale Community Hospital as an ongoing business enterprise. The hospital provides needed medical services to the community, as well as serving as an employer and as a medical service provider attracting business and industry to the area.

Stone Bank has shown a likelihood of success on the merits, that Stone Bank is likely to suffer irreparable harm absent an injunction, that an injunction would not harm third parties, and that an injunction is in the public interest. Therefore, a Preliminary Injunction should issue against

CAH 11 prohibiting it, the owner and operator of the hospital, from using, taking or wasting any funds or property of the hospital except for the necessary things required to preserve and continue operation of the hospital in the ordinary course of business.

The Court finds that there is at present insufficient information to determine whether appointment of a receiver is an appropriate remedy in this action. The Court therefore finds that, as an interim step, it is appropriate to appoint a Special Master to review the financial records of CAH 11 and make a report to the Court. The Court further finds that Marianna Williams is qualified and able to serve as Special Master and Gary Shorb may assist her as need be.

**IT IS THEREFORE ORDERED:**

1.       Effective immediately, Marianna Williams is hereby appointed as Special Master and directed to obtain, review and evaluate the financial records and operations of CAH 11 (hereinafter the "Colatteral") and make a report to the Court of their findings by the close of business on February 18, 2019.

2.       Defendant CAH Acquisition Company 11, LLC and its agents are ordered immediately to provide the Special Master with uninterrupted access to all books, records, accounts, and documents relating to the Collateral and the operations thereon including  but not limited  to  the  "Financial Statements and Other Reports" identified in  Article 4 Section 4.1 of the Loan Agreement.

3.       CAH 11 and its agents shall immediately provide access to Special Master of all books, records, security deposits, escrows, leases, contracts, computers and access to all financial and other information relating to the Collateral and the operations thereon maintained in any form, including electronically, and further including information regarding computers and software

5

programs utilized by CAH 11 and its agents, and as well as all administrator access codes, user names, passwords, and other information or authorization necessary to give the Special Master full access to all such information relating to the Collateral.

4.      Any and all other persons and entities in possession of or having custody or control over any documents, books, accounting records and/or accounts (including deposit accounts) relating to the operation of the Collateral, including, but not limited to CAH 11 and its agents, shall allow access to such items to the Special Master forthwith. Included within these records are copies, if any, of all service contracts and utility bills, any and all current or past operating statements of the Collateral, bank records and any other documents maintained by CAH 11 or its agents pertinent to the management of the Collateral.

5.      Until further order of this Court, CAH 11, and those acting in concert with CAH 11, on notice of this Order, are hereby restrained and enjoined from interfering in any way with the Special Master's access to the Collateral or its records during the pendency of this action.

6.      The Special Master shall have all of the usual powers and duties of Special Masters in similar cases, including, without limitation, the power to:

(a)      Inspect and review all documents, books, records, papers and accounts relating to the Collateral;

(b)      Determine and report to the Court and Lender whether any Rents have been previously received by Borrower or its agents and used for purposes other than for the maintenance, management, and expenses of the Collateral; and

(c)      Require any and all officers, directors, managers, agents, representatives, independent contractors, partners, affiliates, attorneys, accountants, shareholders, and employees

6

of Borrower or its agents access to all information concerning CAH 11 in their possession.

7.      The Special Master shall maintain accurate accounting and other records of their activities in connection herewith and shall file a report detailing the results from their investigation of the finances and operations of the Collateral.  The report shall include, but not be limited to, information as to:

(a)      The reasons for the development of the financial trouble starting in the summer of 2018;

(b)      The deterioration of hospital resources (personnel and supplies), including the resources available from June 2018 to the present, why adequate resources were not available and the decisionmakers responsible for that state of affairs;

(c)      The management structure/organizational chart, including decisionmakers responsible for all aspects of hospital operations; and

(d)      The current status of all hospital operations, including all financial aspects, staffing (employees and independent contractors), supplies and other issues critical to maintain the hospital's critical access status.

8.      The Special Master shall serve at the pleasure of this Court and shall be compensated, at the expense of CAH 11, for her services in an amount to be submitted for approval to the Court.

9.      Nothing in this Order shall impair or in any manner prejudice the rights of Stone Bank to receive payment pursuant to the terms and provisions of the Loan Documents or to exercise its other rights and remedies as to the Collateral including, without limitation, to foreclose the Collateral.

10.	This Order is without prejudice to the right of Stone Bank or the Special Master to make future application to this Court by motion and upon notice to all parties for further or other authority as may be necessary in the performance of their duties, including without limitation expanded powers.

**IT IS FURTHER ORDERED, ADJUDGED AND DECREED THAT:**

11.	All persons, firms, corporations, associations and financial institutions within the jurisdiction of this Court, including, but not limited to, Defendant CAH Acquisition Company 11, LLC or any employees, agents, managers, or anyone on Defendant's behalf or at Defendant's direction are restrained from disbursing, collecting, disposing, destroying, transferring, wasting, utilizing, and converting any and all real and personal property, fixtures, leases, licenses, rental agreements, and occupancy agreements of whatever form now or hereafter affecting all or any part of certain real property commonly known as Lauderdale Community Hospital generally located at 326 Asbury Avenue, Ripley, Tennessee (the "Property") and all deposits (whether for security or otherwise), Rents (as defined in the Complaint), issues, profits, revenues, royalties, accounts, rights, benefits, and income, of every nature of and from the Property, including without limitation, minimum rents, additional rents, termination payments, forfeited security deposits, and other proceeds of any kind whatsoever derived, generated, or related to or from the Property, pending further Orders of this Court to the contrary, provided however, that Defendant shall be able to pay its reasonable and necessary expenses in the ordinary course required for preservation of the Property from the Rents so long as no funds are paid to any company owned by the Defendant, or its agents, including, but not limited to, EmpowerHMS, LLC.

12.	CAH 11 shall immediately freeze all third party access to its accounts, including

8

but not limited to ACH access, wire transfer access or any other type of third party access or ability to withdraw, transfer or move funds out of its accounts including but not limited to the deposit account or accounts at US Bank.

13.    This Court will reserve judgment on all matters addressed in the Complaint not expressly addressed by this Order and will address those issues at the trial of this matter or upon motion of either party.

14.    This Court shall retain jurisdiction of this cause for the purpose of granting such other further relief as shall be just and equitable.

15.    The bond given in the Chancery Court of Lauderdale County, Tennessee shall be sufficient bond required of the appointed Special Master in connection with this Order.

16.    The Court hereby directs all parties to appear on **February 21, 2019 at 3:00pm** for a status conference in this matter.

**IT IS SO ORDERED,** this 1st day of February, 2019.

s/ Sheryl H. Lipman
SHERYL H. LIPMAN
UNITED STATES DISTRICT JUDGE